IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| STACIA TRAVIS, as personal representative of the ESTATE OF LINDA CHARMEL CAMP, deceased, and JUSTIN CAMP<br><br>    Plaintiffs,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL, INC., et al.,<br><br>    Defendants. | Case No. 6:18-cv-06042-BRW |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF DR. RALPH SCOTT**

Plaintiffs Stacia Travis, as personal representative of the Estate of Linda Charmel Camp ("Mrs. Camp" or the "Estate"), and Justin Camp respectfully provide this brief in response to Defendants' motion to exclude the opinion testimony of Dr. Ralph Scott (the "Motion") (Doc. 38).

### I:     ISSUE PRESENTED

By statute, Arkansas law clearly and unambiguously provides a decedent to be compensated for and recover loss-of-life damages. A.C.A. § 16-62-101(b); *Durham v. Marberry*, 356 Ark. 481, 156 S.W. 242 (2004). Such damages "seek to compensate a decedent for the loss of the value that the decedent would have place on his or her life." *Id.* Here, Plaintiffs have proffered Dr. Ralph Scott, an economist, to help provide a method the jury may use in order to derive a value for Mrs. Camp's life and to compensate the Estate for her loss. Defendants' seek to keep such

assistance from the jury, and claim Dr. Scott's opinions to be too speculative, unreliable and irrelevant to be admitted into evidence. The question then is whether the expected testimony is sufficiently reliable and will be helpful to the jury.

## II:   FACTUAL SUMMARY

On November 12, 2019, Mrs. Camp died in her home while the living room was engulfed in a fire. She died of smoke inhalation, but she also had severe burns in several places over her body. Plaintiffs allege the fire was started by defective ASUS laptop computer ("Computer"), that burst into flames and took Mrs. Camp's life. Her Estate seeks loss of life damages pursuant to A.C.A. § 16-62-101(b).

## III:   LAW AND ARGUMENT

In *Durham v. Marberry,* 356 Ark. 481, 156 S.W.3d 242 (2004), the Arkansas Supreme Court found the language of *Ark. Code Ann.* §16-62-101(b) to be clear and unambiguous and held that it was not necessary for a decedent to live for a period of time between injury and death in order to recover such damages. The Court established that "[l]oss-of-life damages seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life." Id.at 492, 156 S.W.3d at 248.

In *Durham, supra.* the Arkansas Supreme Court discussed Connecticut's provision for "just damages:"

"Just damages" include (1) the value of the decedent's lost earning capacity less deductions for her necessary living expenses and taking into consideration that a present cash payment will be made, (2) compensation for the destruction of her capacity to carry on and enjoy life's activities in a way she would have done had she lived, and (3) compensation for pain and suffering."

2

*Id.* at 490, 156 S.W.3d. at 247 *(quoting Katsetos v. Nolan,* 170 Conn. 637, 657, 368 A.2d 172, 183 (1976) (internal footnote omitted) (emphasis added)). *See also* Howard W. Brill, *Arkansas Law of Damages* § 34:1B (5th ed. 2004). The Arkansas Supreme Court has observed that such damages "were damages for the loss of the decedent's life, which, in turn, led to the destruction of her ability to carry on life's activities." 356 *Ark. at* 491, 156 S.W.3d at 247.

The United States District Court for the Eastern District of Arkansas has also examined loss-of-life damages pursuant to *Ark. Code Ann.* § 16-62-10l(b). In *McMullin v. United States,* 515 F. Supp. 2d 914 (E.D. Ark. 2007), the District Court, in reviewing the *Durham* decision, concluded that many types of evidence may be presented as evidence of loss-of-life damages to establish how to place a value on the deceased's life. *Id.* at 927.   [A]n estate seeking loss-of-life damages pursuant to Ark. Code Ann. §16-62-101(b) must present some evidence, that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages. The Court did not require that the evidence presented be limited to direct evidence, as circumstantial evidence may certainly be used to prove loss-of-life damages. *See also One Nat'l Bank v. Pope,* 372 Ark. 208, 272 S.W.3d 98 (2008).

### A.  Dr. Ralph Scott's testimony is tremendously helpful to the jury given the difficulty of the issue.

The 8th Circuit has "boiled down" the requirements set forth in F.R.E 702 into a three-part test: (1) Evidence based on scientific, technical, or other specialized knowledge must be *useful* to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. (2) The proposed witness must be *qualified* to assist the finder of fact; and (3) the proposed evidence must be *reliable* and *trustworthy* in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. *Myatt v. Smith & Newphew, Inc.,* No. 3:17-

CV-03102, 2019 WL 469923 at *2 (W.D. Ark. 2019) (quoting *Polski v. Quigley Corp.,* 538 F.3d. 836, 839 (8th Cir. 2008) (emphasis added). Multiple attempts to exclude Dr. Scott's testimony have failed.

In *Myatt,* defendant's motion to exclude the testimony of Dr. Scott was denied after the Court held that his testimony was reliable, his methodology was clear, and his results were based on actual data. *Id.* at 5. The Court also noted that Dr. Scott would be available for cross-examination, giving defendants an opportunity to convey their concerns to the jury. *Id.*

A similar situation arose in *Jordan v. Enrique Ventura,* No. 4:17-CV-4011, 2019 WL 1199517, at *3 (W.D. Ark. 2019), when the defendant filed a motion in limine seeking to exclude the testimony of Dr. Scott as "too speculative." *Id.* The Court denied this request, ultimately finding that Dr. Scott would be available for cross-examination giving defendants the opportunity to challenge his conclusions. *Id.* It happened again in in *Rice v. Union Pacific Railroad Company*, No. 4:12-cv-00108-SWW, 2012 WL 1710906, at *5 (E.D. Ark. 2012), with the court holding that defendants would have the opportunity to cross-examine and challenge Dr. Scott's assumptions and qualifications. *Id.*

Moreover, Judge Chris Piazza in Pulaski County Circuit Court also allowed Dr. Scott to testify as to loss-of-life damages over a defendants' same objection that his testimony was unreliable. *Thomas v. Meadors*, Pulaski County Circuit Court, Case No. 60CV-13-3438, Pre-Trial Order of June 17, 2016 (**Exhibit 1**).

Here, Dr. Scott has been called upon to give testimony using a clear methodology that is based on actual data, just like in *Myatt,* 2019 WL 469923 at *2 and *Thomas.* Without such data, a jury would not have this economic support to begin the process of determining loss-of-life damages.

Plaintiffs in this case have not asserted that Dr. Scott's testimony will accurately value Mrs. Camp's life, there is other evidence about how she lived, how she loved, and was loved, but instead, have offered this economic material that will also assist a jury. Of course, as in all of the other cases allowing Dr. Scott to testify, Defendant's will also have the opportunity to cross-examine Dr. Scott and make their concerns and arguments known to the jury, who will ultimately decide the weight that is to be given to Dr. Scott's testimony.

### B. Court considering expert testimony regarding loss of life damages often allow it and defendants are obviously able to cross examine the witness.

Defendants are correct in their assertion that VSL figures have been a contentious issue in state and federal courts for many years. Case law presented to this Court in Defendant's Motion to exclude Dr. Scott shows only one approach taken by courts regarding VSL figures, to exclude it. There is, however, more than one way to deal with VSL data and loss of life damages, and that is to allow it.

In *Lee v. Overbey*, No. 08-2115, 2009 WL 10673099 at *1 (W.D. Ark. 2009), defendants challenged the introduction of expert economic testimony regarding the value of life using the "Willingness-to-Pay" model. *Id.* The Court allowed the testimony because (1) it was peer reviewed; (2) the method "received sufficient general acceptance for admission; (3) the expert "possessed specialized knowledge that can aid the trier of fact in determining compensation for loss of life;" (4) the expert relied on sufficient facts and data; (5) and it was shown by a preponderance of evidence that the expert's opinion is sufficiently relevant and reliable. *Id.*

Similarly, in *Snodgrass v. Centerpoint Energy, Inc.,* No. 4:03CV00866, 2005 WL 8164330 at *1 (E.D. Ark. 2005), Judge Moody allowed VSL expert testimony and noted that the court in *Durham,* 2004 WL 583828 (2004), did not reach the issue of whether expert testimony would be appropriate on the issue of loss of life damages. *Id.* The court based its holding on the fact that the

5

testimony would "assist the jury in deciding the issue of loss of life damages," and that defendants would have the opportunity to cross-examine. *Id.* Judge Moody went on to note that the expert's testimony was based on "numerous studies and writings of economists," and that the jury would ultimately decide the appropriate weight to be given to the testimony. *Id.* at 2.

The use of VSL data was also allowed in *Citizens Bank of Batesville v. U.S.*, No. 1:01CV00104 (E.D. Ark. 2002), where Judge Moody again held that the defendants would be able to test the expert's methodology and opinions through cross-examination. Since *Citizens Bank* was a bench trial, Judge Moody noted the Court would determine the admissibility and weight of the testimony after it was given. *Id.*

This Court is under no mandatory authority to exclude expert VSL testimony. The Arkansas Supreme Court did not decide the issue in *Durham*. Courts in both the Eastern and Western Districts of Arkansas have allowed such testimony because it is helpful and open to cross-examination.

### C. **Dr. Scott's opinion is reliable, based in fact, and relevant to the issue at hand.**

Dr. Ralph Scott's opinion in this case is based on actual facts, not erroneous assumptions as argued by defendants. In *Stacy v. PPC Transportation Co.,* No. 4:11-CV-4018, 2013 WL 12171870, at *1-2 (W.D. Ark. 2013), defendant attempted to exclude Dr. Scott's testimony because it was not substantiated by "the actual facts of the case, and thus, is unreliable." *Id.* Defendant, however, missed the point, much like the defendant's in the present case, which is that an expert's testimony must be based in fact; not the actual facts of the case at hand. *Id.* In *Stacy,* Dr. Scott was allowed to testify because his methods were based in fact and the defendant would, again, have the opportunity to cross-examine Dr. Scott about those methods. *Id.* at 3.

This Court has previously held that expert testimony should only be excluded if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Hartley v. Dillards, Inc.,* 310 F.3d 1054, 1061 (E.D. 2002). In *Hartley*, defendants sought to exclude expert testimony of an economist whose testimony showed a general trend of malls losing market share to non-mall competitors. *Id.* Their argument rested on the fact that the economist did not address the specific financial condition of the actual store who was a party to the litigation. *Id.* This Court ultimately held that although the expert opinion did not use specific facts about the actual party to the litigation, the testimony would still be helpful to the jury in considering the pertinent questions. *Id.* Dr. Ralph Scott's testimony does not include specific details regarding Mrs. Camp's life, just as the expert in *Hartley* did not include specific details regarding the mall at issue in that case. However, such testimony is nevertheless helpful to the jury as it gives them a starting point from which to begin deliberating.

Whether the factors laid out in *Daubert* are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999). Direct evidence of the value a person places on their own life is virtually impossible to find, and for most individuals, likely doesn't exist. Defendant's state in their brief that *Durham v. Marberry*, 356 Ark. 581, 156 S.W.3d. 242 (2004) stands for the proposition that determining loss of life damages is an issue that falls "squarely within the purview of the jury," and as such, an expert witness such as Dr. Scott is not allowed. Def.'s Mot. to Exclude 7. The issue of whether or not loss of life damages falls "squarely within the purview of the jury" was not decided by the Court in *Durham*, as it was not ripe for consideration. *Id.* at 493. Instead, the Court in *Durham* was dealing with the issue of whether or

not it was ". . . necessary for a decedent to live for a period of time between injury and death in order to recover loss-of-life damages under A.C.A § 16-62-101(b)." *Id.* at 492.

The Court looked back to a previous ruling which held:

> "No Rule has been established – and in the nature of things none can be – for determining what compensation should be paid for loss of life, for pain and suffering, for loss or decrease of earning power, for mental anguish accompanied by physical injury, for loss of companionship, and for the various elements entering into damage actions."

*W.E. Clark & Sons v. Elliot,* 251 Ark. 853, 857, 475 S.W.2d. 514, 517 (1972). Plaintiffs in this case are not asking Dr. Scott to do the impossible, which is to put a monetary value on Charmel's life. Instead, Plaintiffs have asked him to use his economic expertise to give the jury a starting point for value; one that the United States Government places on its citizens when drafting legislation and regulations that affect every citizen's life. Defendant's argue the phrase "and in the nature of things none can be," *Durham,* 356 Ark. at 493, is some kind of dog-whistle that equates to a rule prohibiting Plaintiffs from using an economics expert to assist a jury in determining the loss of life damages at issue. That is clearly incorrect.

The Court in *Durham* neither required nor prohibited the use of an economist in aiding the calculation of loss-of-life damages. Dr. Scott relies on materials from the United States Government Office of Management and Budget (hereinafter "OMB"), in coming to his conclusion regarding a reasonable valuation that could be placed on Mrs. Camp's life. The data concerning Mrs. Camp's life expectancy came from the United States Census Bureau. The data concerning the value placed on each of those remaining years comes from both the Department of Transportation, and the Environmental Protection Agency. The methodology used by Dr. Scott is consistent with the policies adopted by these various federal entities who require a reasonable starting point to calculate the value of each year of life in order to draft regulations and legislation.

8

Similarly, a jury in this case will need such data in order to effectively deliberate on the issue of the value of Mrs. Camp's life. Giving the jury zero guidance on the reasonable valuation of life increases the risk of injustice to both Plaintiffs and Defendants in this case.

### IV: CONCLUSION

Courts in both Arkansas and the 8th Circuit have allowed VSL expert testimony similar to what Dr. Ralph Scott would provide. Further, Circuit Courts in Arkansas and interpreting Arkansas law have also denied motions seeking to exclude Dr. Scott's opinions related to loss-of-life damages. In the end, these decisions see no prejduce to defendants as they have the ability to cross-examine Dr. Scott and make their reservations about his testimony available to the jury.

For these reasons, and for all of the reasons discussed above, the Court should deny Defendant's motion to exclude Dr. Ralph Scott.

DATE: August 22, 2019

Respectfully,

**POYNTER TUCKER**
  An Association of Law Firms
407 President Clinton Ave, Suite 201
Little Rock, AR 72201
(501) 812-3943
Scott Poynter, AR Bar No. 90077
scott@poynterlawgroup.com
Everett C. Tucker IV, AR Bar No. 2006307
clarke@clarketuckerlaw.com

  /s/ Scott Poynter
Scott Poynter

**WYLY-ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, TX 75503
(903) 334-8646
James C. Wyly, AR Bar No. 90158
jwyly@wylyrommel.com
Sean F. Rommel, AR Bar No. 94158
srommel@wylyrommel.com

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of August, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Scott Poynter
Scott Poynter